# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:19-cv-209-MOC
## (3:17-cr-180-MOC-DSC-1)

| | | |
|---|---|---|
| **ERNEST KEITH, JR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255.[1] (Doc. No. 1). Also pending is "Complaint on BOP/Violation of Rights, Failure to Submit BPA0383," that was docketed as a Motion, (Doc. No. 4), which appears to seek civil rights relief regarding the conditions of Petitioner's confinement in federal prison.

## I.    BACKGROUND

Petitioner was charged in the underlying criminal case with executing a scheme to defraud FedEx Corporation and individuals by operating a series of purported logistics businesses that he falsely and fraudulently represented would arrange shipments of goods throughout the United States at a reduced price. The scheme lasted from 2011 to 2016, involved approximately 200 individuals for more than 390 shipments using more than 20 different FedEx accounts and "resulting in a loss of more than $680,000." (3:17-cr-180, Doc. No. 3 at 1) (Indictment). The charges were: Count (1), mail fraud scheme (18 U.S.C. § 1341); and Count (2), wire fraud scheme

---

[1] Petitioner previously sought post-conviction relief in case numbers 3:18-cv-474-MOC and 3:18-cv-559-MOC, but those proceedings were dismissed without prejudice as premature.

(18 U.S.C. § 1343). (Id., Doc. No. 3). The Indictment contains a Notice of Forfeiture and Finding of Probable Cause in the amount of "at least $680,000, such amount constituting the proceeds of the violations set forth in this bill of indictment." (Id., Doc. No. 3 at 13).

Petitioner pled guilty to being "in fact guilty as charged in Count One" in exchange for the Government's dismissal of Count (2). See (Id., Doc. No. 17 at 1). In a written Plea Agreement, Petitioner acknowledged that his sentencing exposure of up to 20 years' imprisonment, no more than three years of supervised release, and a $250,000 fine. (Id., Doc. No. 17 at 2). Petitioner acknowledged that the advisory Sentencing Guidelines apply to determine the sentence, that the sentence had not yet been determined, that "any estimate of the likely sentence is a prediction rather than a promise," that the Court would not be bound by any of the parties' recommendations or agreements, and that Petitioner "may not withdraw the plea as a result of the sentence imposed." (Id., Doc. No. 17 at 2).

The parties agreed to jointly recommend: a known or reasonably foreseeable loss amount in excess of $550,000 but less than $1,500,000, a base offense level of seven, a 14-level enhancement for loss amount, a two-level enhancement for sophisticated means, and a total offense level of 23. (Id., Doc. No. 17 at 2). The Government agreed that Petitioner's entry of the plea is timely for purposes of U.S. Sentencing Guidelines § 3E1.1(b). (Id., Doc. No. 17 at 2). Notwithstanding any other recommendation, the Plea Agreement provides that, if the Court determines from Petitioner's criminal history that he is a career offender or armed career criminal, such provision may be used in determining the sentence. The parties agreed to make the foregoing recommendations with regards to offense level and would not seek any other enhancements or reductions. The parties were free to seek departure or variance from the applicable guideline range at sentencing. (Id., Doc. No. 17 at 3).

Petitioner stipulated to the existence of a factual basis for the guilty plea, confirmed that he read and understood the written Factual Basis filed with the Plea Agreement, and agreed that the Factual Basis may be used without objection to determine the applicable advisory guideline range or appropriate sentence except for objections that are explicitly reserved. (Id., Doc. No. 17 at 4); see (Id., Doc. No. 18) (Factual Basis).

Petitioner acknowledged the rights he was waiving by pleading guilty including the right to be tried by a jury, to be assisted by an attorney at trial, to confront and cross-examine witnesses, and not to be compelled to incriminate himself (Id., Doc. No. 17 at 5). Petitioner specifically agreed to waive his appellate and post-conviction rights except for claims of prosecutorial misconduct and ineffective assistance of counsel. (Id., Doc. No. 17 at 5). Petitioner also agreed to "pay full restitution regardless of the resulting loss amount…," and to assist the Government with forfeiture as determined by the forfeiture judgment. (Id., Doc. No. 17 at 3-4).

The Factual Basis attached to the Plea Agreement provides:

From in or about 2011 through in or about 2016, the defendant ERNEST KEITH, JR executed a scheme to defraud FedEx Corporation ("FedEx") and individuals throughout the United States by operating a series of purported logistics businesses which he falsely and fraudulently represented would arrange shipments of goods throughout the United States for a reduced price.

In total, KEITH fraudulently induced approximately 200 individuals to utilize his purported shipping services to arrange for more than 390 shipments using more than 20 different FedEx accounts he created for purposes of facilitating his fraudulent scheme as well as multiple accounts associated with unrelated third parties, resulting in a loss of more than $680,000.

From in or about February 2012 through in or about March 2016, KEITH was a resident of charlotte, North Carolina, residing at various addresses in Mecklenburg County that he associated with several of the sham companies he created accounts for at FedEx.

FedEx is an international shipping business headquartered in Memphis, Tennessee. One of the companies operated by FedEx is FedEx Freight. FedEx Freight provides shipping services for less-than-truckload freight shipping. FedEx

Freight generates shipping invoices through its Customer Accounts Processing System, which is located in Harrison, Arizona, and sends those electronic files to a vendor in Logan, Utah for printing and mailing to FedEx Freight customers.

KEITH'S scheme generally operated in the following manner:

     a. KEITH created FedEx Freight shipping accounts in the names of various sham companies;

     b. KEITH solicited customers usually through various internet sites, such as uShip and/or Citizen Shipper, fraudulently inducing customers to utilize his purported shipping services by falsely offering shipping services for purportedly reduced rates;

     c. KEITH had the customer send him payment via various money transmitting services, including, for example, Western Union, Moneygram, PayPal, and/or a Walmart to Walmart transfer;

     d. KEITH then arranged to have the shipment picked up by FedEx, using the FedEx Freight account he had created in the name of a sham company and having the shipment charged to either that sham company or another;

     e. KEITH kept the money transmitted to him by the customer seeking shipment while (l) failing to pay the FedEx invoices or otherwise remit any payment to FedEx for the shipments and/or (2) purporting to submit payments to FedEx from accounts that did not have the funds to cover the payments KEITH submitted; and

     f. When FedEx began holding shipments it identified as associated with KEITH's sham company, KEITH purported to make payments via telephone, which were rejected by the bank due to insufficient funds,

From in or about 2011 through in or about 2016, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendant Ernest Keith, Jr. having devised the above described scheme and artifice to defraud and obtain money and property, and to deprive another of its right to control the disposition of its own money and property, by means of material false and fraudulent pretenses, representations, promises, and omissions of material fact, would and did transmit and cause to be transmitted by means of a private and commercial interstate carrier for purposes of executing said scheme and artifice to defraud, to wit mailings between Mecklenburg County, North Carolina and other states.

Defendant Ernest Keith, Jr.'s conduct involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means.

(Id., Doc. No. 18 at 1-2).

A Rule 11 hearing came before Magistrate Judge David Cayer on March 7, 2018. Petitioner stated in open court during a lengthy and thorough colloquy that his plea was knowingly and voluntarily entered. See (Id., Doc. No. 50). Petitioner stated that he understood the Indictment and sentencing exposure, had enough time to discuss the charges and any possible defense to the counsel, understood the Plea Agreement and its consequences, understood the Factual Basis and agreed with it, was satisfied with his attorney's services. (Id., Doc. No. 50).

The Presentence Investigation Report ("PSR") calculated the offense level as contemplated by the Plea Agreement and no Chapter Four enhancements were added. (Id., Doc. No. 26 at ¶¶ 49-55). Three offense levels were deducted for acceptance of responsibility, resulting in a total offense level of 20. (Id., Doc. No. 26 at ¶¶ 57-59). Petitioner had four criminal history points and two points were added because Petitioner committed the instant offense while he was under a criminal justice sentence. (Id., Doc. No. 26 at ¶¶ 71-72). This resulted in a criminal history score of six and a criminal history category of III. (Id., Doc. No. 26 at ¶ 73). The resulting advisory guideline range was 41 to 51 months' imprisonment and between one and three years of supervised release. (Id., Doc. No. 26 at ¶ 116).

At the sentencing hearing, Petitioner stated that he told the magistrate judge the truth at the Rule 11 hearing and that his answers would be the same. (Id., Doc. No. 51 at 2-3). The Court affirmed the magistrate judge's findings that the plea was knowingly and voluntarily entered, that Petitioner understood the charges, the potential penalties, and the consequences of the guilty plea, and accepted Petitioner's guilty plea. (Id., Doc. No. 51 at 3). The Court also found a factual basis

for the plea based on the parties' stipulations. (<u>Id.</u>, Doc. No. 51 at 4). Petitioner stated that he went over the PSR with counsel and understands it. (<u>Id.</u>, Doc. No. 51 at 4-5). The parties agreed that the PSR reflects the correct guidelines range and the Court adopted the PSR without change. (<u>Id.</u>, Doc. No. 51 at 5). Defense counsel asked the Court to vary from the guidelines range due to an overrepresentation of Petitioner's criminal history, the seriousness of the offense, the nature and circumstances of the offense, and Petitioner's history and characteristics. (<u>Id.</u>, Doc. No. 51 at 6). The Government argued that a guideline sentence is appropriate. (<u>Id.</u>, Doc. No. 51 at 12). The Court considered the factors set forth in 18 U.S.C. § 3553 and the parties' arguments and imposed a sentence at the bottom of the advisory guidelines range. (<u>Id.</u>, Doc. No. 51 at 16-18).

In a Judgment entered on September 27, 2018, the Court adjudicated Petitioner guilty of Count (1), sentenced him to 41 months' imprisonment followed by two years of supervised release, and imposed $721,707.37 in restitution. (<u>Id.</u>, Doc. No. 38). The Court also entered a Final Order of Forfeiture in the amount of $256,685.44. (<u>Id.</u>, Doc. No. 37).

Counsel filed a memorandum brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), on direct appeal because there were no meritorious grounds for appeal but questioned, at Petitioner's request, whether he received ineffective assistance of counsel and whether his sentence was reasonable. Petitioner filed a *pro se* supplemental brief challenging the restitution amount and arguing that the criminal history category overstated his prior record. The Fourth Circuit Court of Appeals affirmed on April 9, 2019. <u>United States v. Keith</u>, 764 Fed. Appx. 324 (4th Cir. 2019). With regards to Petitioner's sentence, the Fourth Circuit concluded that Petitioner did not rebut the presumption of reasonableness and that the Court did not abuse its discretion in imposing the sentence. The Fourth Circuit noted that claims of ineffective assistance of counsel are only

cognizable on direct appeal if the record conclusively establishes ineffective assistance, which the record before the Court did not do.

Petitioner filed the instant *pro se* § 2255 Motion to Vacate on April 23, 2019. (Doc. No. 1). He argues that (restated and renumbered): (1) the sentence is unreasonable; (2) restitution and/or forfeiture amounts are incorrect; and (3) counsel provided ineffective assistance in a number of regards.

The Government filed a Response arguing that Petitioner's claims are waived, non-cognizable, barred, and meritless.

In his *pro se* Letter that was docketed as a Motion, (Doc. No. 4), Petitioner asks the Court to review his Bureau of Prisons records. He feels his rights have been violated and wishes to file a complaint for relief regarding the loss of personal property and negligence at FDC Philadelphia.

## II.      STANDARD OF REVIEW

A federal prisoner claiming "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

### (1)    Unreasonable Sentence Claim

Petitioner argues that his sentence was too severe based on his background and criminal history and that the Court should have granted a downward departure or variance. The Government argues that this claim is waived, barred, not cognizable, and meritless.

 "[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id. An appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). The Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in a plea agreement. See United States v. Lemaster, 403 F.3d 216, 200 (4th Cir. 2005). There are narrow exceptions to the enforceability of plea waivers such that "even a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims." United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005). For instance, because "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court[,] ... a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Marin, 961 F.2d at 496 (emphasis added).

The magistrate judge conducted a thorough Rule 11 colloquy and concluded that Petitioner was pleading guilty knowingly and voluntarily with a full understanding of his plea's consequences including a sentence of up to 20 years' imprisonment. The Court accepted Petitioner's plea after confirming that Petitioner would have answered the Rule 11 questions the same way at the time of sentencing. Petitioner's self-serving and unsupported contentions that he was somehow misinformed of his rights or that his plea was involuntary are rejected. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., Lemaster, 403 F.3d at 221 ("[A]llegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'"). Petitioner's knowing and voluntary plea waived all non-jurisdictional defects including his sentencing challenge and no error, such as sentencing beyond the statutory maximum, occurred that would warrant setting aside the post-conviction waiver.

This claim is also barred from § 2255 review because the Fourth Circuit rejected it on direct appeal. It is well settled that a criminal defendant cannot "circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion." United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013) (quoting United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009)); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.1976) (holding criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on

direct appeal]"). Petitioner argued on direct appeal that his sentence is unreasonable. The Fourth Circuit found no procedural error occurred and concluded that the Court did not abuse its discretion in imposing the chosen sentence. As Petitioner's unreasonable sentence challenge was already denied on direct appeal, this Court need not reconsider it in this post-conviction proceeding.

Petitioner's claim that his guidelines range was somehow incorrect is also not cognizable on § 2255 review. Barring "extraordinary circumstances, ... an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding." United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999). Section 2255 provides relief for cases in which "the sentence was in excess of the maximum authorized by law." Thus, while § 2255 applies to violations of statutes establishing maximum sentences, it does not usually apply to errors in the application of the Sentencing Guidelines. See United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999) ("misapplication of the [sentencing] guidelines typically does not constitute a miscarriage of justice."). Merely alleging a miscalculation of the guidelines does not give rise to a constitutional issue and therefore is not cognizable in the context of a § 2255 motion to vacate. Pregent, 190 F.3d at 284. Petitioner's challenge to the calculation of his criminal history is a nonconstitutional claim that would not be cognizable in these proceedings even if it was not waived and barred.

Petitioner's claim that his sentence is unreasonable is therefore waived, barred, and non-cognizable on § 2255 review.

**(2)    Forfeiture/Restitution Claims**

Petitioner appears to argue that the forfeiture and/or restitution amounts were miscalculated.[2] He claims that investigation would have shown $2,56,685.44 was the "amount of money received" and he "do[es] agree and admit[s] guilt" in that amount. (Doc. No. 1 at 19).

Petitioner's attempts to challenge the forfeiture and restitution amounts are not cognizable on § 2255 review because these are non-custodial portions of Petitioner's sentence do not "claim[] the right to be released…," and thus § 2255 is inapplicable. 28 U.S.C. § 2255(a); see United States v. Fabian, 798 F.Supp.2d 647 (D. Md. 2011) (noting that, although the Fourth Circuit has not addressed the question, it appears that nearly every other Court of Appeals that has considered the question has concluded that restitution orders cannot be attacked through a § 2255 petition, including those filed while the defendant is incarcerated) (collected cases).

Even if Petitioner's challenges to restitution and forfeiture were cognizable, Petitioner waived them by entering his knowing and voluntary guilty plea in which he admitted his guilt and that the loss was more than $680,000. See Section (1), *supra.* Further, the forfeiture challenge was already decided adversely to Petitioner on direct appeal. Id.

For all the foregoing reasons, Petitioner's restitution and forfeiture challenges are denied.

## (3)    Ineffective Assistance of Counsel

Petitioner argues that counsel was ineffective for (restated and renumbered): (A) failing to negotiate a more favorable plea offer and pressuring Petitioner to plead guilty; (B) failing to adequately investigate the case and present exculpatory evidence; (C) misinforming Petitioner about his criminal history score and failing to challenge Petitioner's criminal history score; (D) failing to challenge the forfeiture and restitution amounts; and (E) failing to raise additional

---

[2] He claims *verbatim* "miscalculation of forfeiture based on further review – the actual amount that I received was $256,000 – restitution should note as civil and restitution owed. Grand jury indicted wrong amount unchallenged." (Doc. No. 1 at 6).

miscellaneous claims such as inadequately communicate with Petitioner's family members and failing to seek Petitioner's release on bond or bail.

The Sixth Amendment to the U.S. Constitution guarantees that, in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the

petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 697.

The Sixth Amendment right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are "entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel, as well as a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it. Frye, 566 U.S. at 147. It is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time. Id.

**(A)**     **Guilty Plea**

Any suggestion that Petitioner's guilty plea was involuntarily is conclusively refuted by the record. Petitioner knowingly and voluntarily entered his guilty plea will full knowledge of the rights he was waiving and the plea's consequences including his sentencing exposure. See Section

(1), *supra*. Petitioner explicitly stated that his plea was not based on any threats or promises and that it was freely and voluntarily entered with advice from counsel with whom he expressed satisfaction. The record, including Petitioner's own sworn statements in open court, refutes his present suggestion that the plea was involuntary and his present self-serving claim to the contrary is rejected. <u>See</u> <u>Blackledge</u>, 431 U.S. at 74; <u>Lemaster</u>, 403 F.3d at 221–22.

Petitioner's claim that counsel was ineffective for failing to negotiate a more favorable plea agreement is likewise rejected. Petitioner's claim that counsel could have or should have procured a more favorable plea offer is purely speculative and cannot support relief. <u>See</u> <u>Dyess</u>, 730 F.3d at 354 (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court). Moreover, the record reflects that counsel represented Petitioner zealously and procured an extremely favorable plea offer that resulted in the dismissal of a serious count and obtained a sentence at the bottom of the advisory range. This claim will therefore be denied.

**(B)**     **Failure to Investigate**

Next, Petitioner suggests that counsel failed to adequately investigate the case and present exculpatory evidence.

Petitioner's entry of a knowing and voluntary guilty plea excused counsel from further investigating the case or from challenging the Government's case with any evidence. To the extent that Petitioner attempts to suggest that he is not guilty of the offense to which he pled guilty, this claim is refuted by his admission that he is guilty of Count (1) and will be rejected. <u>See</u> Section (1), *supra*.

**(C)**     **Criminal History**

Petitioner contends that counsel was ineffective for misinforming him about his criminal history score and for failing to challenge the criminal history score.

This claim is conclusively refuted by the record. Petitioner acknowledged in the Plea Agreement and in open court at the Rule 11 hearing that he discussed the advisory guidelines with counsel, that he understood that the advisory guideline range had not yet been calculated and that a PSR would be prepared, that the Court would impose a sentence up to the statutory maximum of 20 years, and that any predictions by counsel regarding the ultimate sentence would not be binding on the Court. Petitioner's present self-serving contention that that counsel guaranteed him a particular sentence is therefore rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Moreover, the record reflects that counsel sought a sentence below the advisory guideline range arguing, *inter alia*, that the PSR overrepresented Petitioner's criminal history. The Court denied counsel's motion but imposed a sentence at the bottom of the advisory guideline range. Petitioner fails to explain what more counsel could have done that had a reasonable probability of resulting in a lower sentence. Therefore, this claim will be denied.

**(D)** **Forfeiture and Restitution**

Petitioner contends that counsel was ineffective for failing to challenge the forfeiture and restitution amounts.

This claim is not cognizable on § 2255 review because it is a nonconstitutional claim and does not relate to Petitioner's custody. See Shephard v. United States, 735 F.3d 797, 798 (8th Cir. 2013) (petitioner was not claiming a right to be released from custody so, even if counsel was ineffective with regards to restitution, this claim could not be raised in a § 2255 petition). Even if this claim was cognizable, it would fail on the merits because Petitioner's restitution and forfeiture

are consistent with his admission of guilty to Count (1), the Plea Agreement, and the Factual Basis, and it was waived by Petitioner's knowing and voluntary guilty plea. Counsel cannot be deemed ineffective for failing to challenge forfeiture and restitution amounts that are supported by the record and Petitioner's admission of guilt. See generally Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) ("this Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.").

> **(E)**      **Miscellaneous Claims**

Finally, Petitioner raises additional miscellaneous claims of ineffective assistance of counsel such as counsel's alleged failure to adequately communicate with Petitioner's family members and failure to seek Petitioner's release on bond or bail.

Petitioner's knowing and voluntary guilty plea waived any claims of ineffective assistance of counsel that preceded the plea. Moreover, these claims are too vague and conclusory to support relief because Petitioner fails to explain how any of counsel's alleged actions or inactions on these extraneous matters affected the outcome of the proceedings in any way. See Dyess, 730 F.3d at 354.

## (4)      Civil Rights Claims

In his pending Motion, Petitioner appears to challenge the conditions of his confinement in the federal Bureau of Prisons.

A civil rights claim is not cognizable in a § 2255 action. See generally Preiser v. Rodriguez, 411 U.S. 475 (1973) (habeas and a civil rights suit pursuant to 42 U.S.C. § 1983 are mutually exclusive). A prisoner's claims challenging the conditions of his confinement are appropriately brought as a civil rights action. See 42 U.S.C. § 1983; Bivens v. Six Unknown Named Agents of

Fed. Bureau of Narcotics, 403 U.S. 388 (1971) (recognizing the federal equivalent of 42 U.S.C. § 1983).

Petitioner's challenges to the conditions of his confinement are not cognizable in this § 2255 proceeding and therefore his Motion will be denied and his civil rights claims will be dismissed without prejudice. To the extent that Petitioner seeks to pursue such claims, they must be filed in a separate civil action in the appropriate court. See generally 28 U.S.C. § 1391. The Court will instruct the Clerk to provide Petitioner with a blank civil rights complaint form.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate is dismissed with prejudice and denied and Petitioner's pending Motion seeking civil rights relief is denied.

**IT IS, THEREFORE, ORDERED** that:

1.    Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** and **DENIED**.

2.    Petitioner's "Complaint on BOP/Violation of Rights, Failure to Submit BPA0383," (Doc. No. 4), is construed as Motion to seek civil rights relief in this action and is **DENIED**.

3.    The Clerk is respectfully instructed to mail Petitioner a blank § 1983 civil rights complaint form.

4.    **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: March 9, 2020

Max O. Cogburn Jr
United States District Judge